ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 22 2005

CLERK, U.S. DISTRICT COURT
BY _____
        DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| PAULA BROOKMAN, | § |
|     PLAINTIFF, | § |
| | § |
| VS. | § CIVIL ACTION NO. 4:04-CV- 0165-Y |
| | § |
| JO ANNE B. BARNHART, | § |
| COMMISSIONER OF SOCIAL SECURITY, | § |
|     DEFENDANT. | § |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

A.   STATEMENT OF THE CASE

Plaintiff Paula Brookman brings this action pursuant to Section 405(g) of the Social Security

Act, Title 42 of the United States Code, for judicial review of a final decision of the Commissioner

of Social Security denying her claim for disability insurance benefits under Title II of the Social

Security Act. Brookman applied for disability benefits on August 21, 2001, claiming disability

beginning January 8, 2001. (Tr. 88, 103). She meets the insured status requirements through at

least March 2006. (Tr. 74). The Social Security Administration denied Brookman's application for

benefits both initially and on reconsideration.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 1**

Brookman requested a hearing before an administrative law judge (the "ALJ"), and ALJ Ward D. King held a hearing on May 13, 2003 in Fort Worth, Texas. (Tr. 39-60). Brookman was represented by counsel. On July 21, 2003, the ALJ issued a decision that Brookman was not disabled because she had the residual functional capacity (RFC) to perform a modified range of light work activity, including her previous work as a department store cashier. (Tr. 18-24). The Appeals Council denied Brookman's request for review of his case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 3).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 404.1520(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work,

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 2**

considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley,* 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart,* 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson,* 309 F.3d at 272. The court will not re-weigh the evidence, try the questions *de novo,* or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Id.*; *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir.2000).

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 3**

C.      ISSUES

        1.      Whether the ALJ properly weighed all medical source statements.

        2.      Whether the determination that Brookman is capable of performing her past relevant

                work is supported by substantial evidence and complies with relevant law.

        3.      Whether Brookman's equal protection rights have been violated.

D.      ADMINISTRATIVE RECORD

        1.      Medical History[1]

The administrative transcript contains the following information:

Born May 13, 1956, Brookman was forty-four years old on her alleged disability onset date

of January 8, 2001.  (Tr. 88).  She has received mental health services from Tarrant County Mental

Health and Mental Retardation (MHMR) for several years.  (Tr. 147-216).

        During a visit with her counselor at MHMR on January 30, 2001, Brookman reported feeling

more depressed than usual and difficulty sleeping since losing her job three weeks earlier.  (Tr. 195).

She was taking the antipsychotic medication Risperdal and the antidepressant Celexa.  Her principal

diagnosis was bipolar disorder, and her current Global Assessment of Functioning (GAF) score was

assessed as 55.[2]  (Tr. 196).  At a follow-up visit on March 7, 2001, Brookman complained that her

---

[1]  Brookman filed for disability on the basis of both physical and mental impairments, but in her brief, she
primarily challenges the ALJ's assessment of her mental impairments and medical opinions related to those
impairments.  A review of her medical history will be similarly limited.

[2]  A GAF score is a standard measurement of an individual's overall functioning level with respect to
psychological, social, and occupational functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND
STATISTICAL MANUAL OF MENTAL DISORDERS 32  (4th ed. 1994)(DSM-IV).  A GAF score of 51-60 reflects
moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in
social, occupational or school functioning ,e.g., few friends, conflicts with peers or co-workers. *Id.* at 34.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 4**

concentration and motivation were poor. She was assigned a GAF score of 55. (Tr. 192-93).

On April 4, 2001, Brookman complained of decreased energy, motivation, and interests, and an increase in her depression. She reported little interest in self-care, bathing, and appetite, and said her son-in-law had recently been arrested for molesting her grandchildren. (Tr. 190). She had applied for unemployment benefits, but was not looking for a new job. On May 9, 2001, Brookman's complaints had not improved. Her GAF score was assessed as 50,[3] and a prescription for a second anti-depressant, Wellbutrin, was prescribed. (Tr. 184). During a counseling session on May 24, 2001, Brookman said she was having more good days than bad days, but still felt tired and was not motivated to go anywhere. (Tr. 177). Brookman returned to MHMR on June 6, 2001 to report mild improvement in her depression, but increased anxiety and headaches. (Tr. 171). The medication Neurontin was added to her treatment regimen as a mood stabilizer. (Tr. 171).

On December 10, 2001, Brookman underwent a psychiatric consultative examination with Peter Holm, M.D. (Tr. 230). Brookman reported having bipolar disorder and anxiety, and stated that she was fired from her last job for making too many mistakes. She felt unable to return to work because of depression accompanied by diminished attention, concentration, and short-term memory. (Tr. 230). Brookman reported feeling depressed since she was a teenager. She also experienced intermittent manic episodes characterized by racing thoughts, rapid speech, and irritability. Her depressive moods were accompanied by irritable mood, some vague paranoia, hypersomnia, comfort

---

[3] A GAF score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). *See id.*

**Findings, Conclusions and Recommendation of the United States Magistrate Judge–Page 5**

eating, low energy, isolation, diminished enjoyment of activities, and diminished attention and concentration. (Tr. 231).

Holm conducted a mental status examination. Brookman was adequately groomed, cooperative, alert and pleasant. She demonstrated a moderate poverty of speech, but her speech was otherwise unremarkable and fluent. (Tr. 232). Eye contact and psychomotor activity was moderately diminished. Her mood was depressed and irritable, with a moderately blunted affect. Brookman demonstrated coherent and logical thinking without looseness of associations. She described some vague paranoia for the last twelve years, but no suicidal ideations since she was a teenager. Brookman was oriented and was able to recall the current President and the four previous Presidents, her social security number, and three out of four objects when tested after three minutes. She correctly performed simple calculations. (Tr. 232-33).

Holm diagnosed a bipolar disorder, depressed with paranoia, and assessed a GAF score of 50. Brookman's prognosis was guarded, but medication had proved helpful in managing her symptoms. (Tr. 234). Brookman was considered capable of managing her own funds.

Brookman was seen at MHMR on January 16, 2002. She continued to feel depressed and described crying spells, decreased energy, and decreased motivation. (Tr. 159). The psychiatrist increased Brookman's dosage of Wellbutrin, which resulted in some improvement in her condition. Her treatment regimen remained unchanged after a follow-up visit in March. (Tr. 156).

On April 16, 2002, Brookman reported feelings of anxiety secondary to stress. (Tr. 154). In May, Brookman was described as "draggy," and she exhibited very slightly slurred speech and increased depression. Her GAF score remained at 50. On July 11, 2002, Brookman reported feeling

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 6**

more unstable due to an increase in situational stress. Her GAF score was assessed as 48. (Tr. 148-49). She was instructed to continue her current medications. (Tr. 148).

On August 22, 2002, Brookman complained of occasional visual hallucinations and increased headaches due to her medications. (Tr. 296). Brookman reported feelings of worthlessness and continued depression during follow-up visits at MHMR in November. (Tr. 282-83). Her medications were adjusted, but Brookman subsequently complained that her current medications made her feel like a zombie. She felt shaky and complained of dizziness and decreased sleep. Her medications were adjusted again due to her reported side-effects. (Tr. 280-284).

In January 2003, Brookman was noted to be noncompliant after reporting that she had been without her medication for about a week and had not picked up her prescriptions at the pharmacy or followed up on benefits with MHMR's benefits department. She was given one day's supply of her medications. (Tr. 274).     On January 28, 2003, Brookman reported that her motivation remained in decline and she felt tired. She sometimes thought someone was talking to her even when she was alone. (Tr. 308). She was given a prescription for Abilify for its mood elevating affect and to help with her hallucinations.

On February 18, 2003, Brookman's treating physician Garrick Prejean, M.D., issued a handwritten statement in which he reported that Brookman was being treated for bipolar disorder with two antidepressants (Celexa and Wellbutrin), a mood stabilizer (Neurontin), and two antipsychotics (Risperdal and Abilify). (Tr. 312). Prejean noted that Brookman continued to exhibit symptoms including a depressed mood, fatigue, poor energy, anhedonia, and hallucinations despite her medications. Prejean opined that Brookman, in light of her ongoing symptoms and fair amount

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 7**

of resistance to treatment, was unable to maintain employment. (Tr. 312).

During a visit to MHMR on March 11, 2003, Brookman said that she had been out of her medications for about three weeks and was not doing well. (Tr .306). She was experiencing difficulty sleeping, anger, rage, nightmares, and mood swings. She also reported occasionally hearing voices and seeing things out of the corner of her eye. She complained that Wellbutrin gave her a headache when she took it. Brookman was vague in answering the nurse's questions, but her affect seemed bright despite her complaints. (Tr. 305). Brookman continued to complain of feeling depressed and unmotivated during a follow-up visit on April 15, 2003. (Tr. 299).

On April 29, 2003, treating psychiatrist Olusegun Solano, M.D., opined that he and the other members of Brookman's treatment team believed Brookman was unable to maintain gainful employment due to the nature of her mental illness. (Tr. 313).

2.      Administrative Hearing

Brookman testified that she was born May 13, 1956 and had obtained a GED. She had completed vocational training in the travel and tourism industry and also had executive secretary training. (Tr. 43-44). Brookman had experience as a medical office secretary, a sleep disorder clinic technician, and dry cleaner counter cashier, but was fired from those jobs for performance issues. (Tr. 45-50). She had worked as a department store cashier, but quit after hurting her back.

Brookman testified that she was depressed, which caused her to sleep a lot. (Tr. 51). She also had difficulty concentrating and had no short-term memory. (Tr. 52, 55). She talked to friends on the telephone, but engaged in no other social activities. (Tr. 52). She complained of a low energy level for several years. She had attempted suicide on several occasions when she was younger.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 8**

Brookman admitted having some paranoid thoughts. She also had sudden bursts of anger that had caused problems with her previous employers. (Tr .54-55). Brookman testified that she did not clean house and cooked only occasionally. (Tr. 55). She also had difficulty driving because she was unable to pay attention and would forget where she was going. (Tr. 56). Brookman testified that she slept for three or four hours during the day. (Tr. 56).

Brookman's husband, Mark Thomas Brookman, testified that his wife was depressed and unmotivated. (Tr. 58). She slept a lot, and he feared that she might kill herself. He thought his wife's condition might improve if she was approved for disability insurance and the family's financial situation improved. (Tr. 59).

3.    ALJ Decision

The ALJ found that Brookman had not engaged in substantial gainful activity since January 8, 2001 and had the following severe impairments: lumbar degenerative disc disease, obesity, hiatal hernia (post surgery), and bipolar disorder. (Tr. 19). However, the ALJ found that Brookman's impairments, individually or in combination, did not meet or equal the severity of any section in the Listing of Impairments. Instead, the ALJ found Brookman retained the residual functional capacity (RFC) for light work that did not require climbing, extended concentration or attention, or extensive and involved contact with the public. (Tr. 23). The ALJ decided that Brookman's past relevant work as a department store cashier did not exceed her current RFC. Because Brookman was not prevented from performing her past relevant work, she was considered not disabled and not entitled to disability insurance benefits. (Tr. 24).

**Findings, Conclusions and Recommendation of the United States Magistrate Judge–Page 9**

E.    DISCUSSION

1.    Medical Source Statements

Brookman contends that the ALJ erred in failing to weigh her GAF scores in his disability decision.  Brookman asserts that GAF scores are medical source opinions and medical source opinions must always be addressed by the adjudicator. *See generally* SOCIAL SECURITY RULING 96-2p, 96-5p, 96-8p.

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite her impairments, and any physical or mental restrictions.  20 C.F.R. § 404.1527(a)(2).  The ALJ addressed the disability statements provided by two of Brookman's treating physicians at MHMR, Garrick Prejean and Olusegun Solano.  However, the ALJ found that the record showed Brookman had been non-compliant with her treatment regimen, and determined that the treating source opinions were not supported by medically acceptable clinical and laboratory diagnostic techniques.  The ALJ further found that the opinions were inconsistent with the substantial evidence in the record, including the physicians' own progress notes.  (Tr. 23).  The ALJ gave the opinions little weight.

Brookman asserts that the ALJ would have found the treating source opinions were entitled to more weight if her GAF scores had been properly considered.  She also asserts that her GAF scores demonstrate that she meets Listing 12.04 for affective disorders and is thus presumptively disabled.  *See generally* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04.

A GAF score reflects a clinician's judgment about an individual's overall functioning and

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 10**

is a useful tool in planning treatment, measuring its impact, and predicting outcome. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994)(DSM-IV). But Brookman cites no authority to suggest that any particular GAF score is a determinative measure of disability for purposes of assessing a claimant's disability or residual functional capacity (RFC) for work-related activities.

The ALJ's failure to mention Brookman's relatively low GAF scores does not in and of itself warrant reversal without consideration of the other reliable evidence in the record. Although the ALJ did not explicitly refer to Brookman's GAF scores, he accepted that her bipolar disorder constituted a severe impairment. Ultimately, however, the ALJ found that Brookman's impairments were not sufficiently severe as to preclude all work activity, and that determination is supported by substantial evidence. In particular, Brookman did well during the consultative mental status examination and the state agency medical consultants who reviewed the consulting psychiatrist's report found no restrictions in Brookman's daily activities; moderate difficulty in her ability to maintain social functioning and her ability to maintain her concentration, persistence or pace; and no evidence of episodes of decompensation. (Tr. 257). The state agency consultants further found no significant limitation in Brookman's ability to perform twelve work-related functions[4] and

---

[4] The twelve areas without significant limitation included the ability to (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (4) sustain an ordinary routine without special supervision; (5) make simple work-related decisions; (6) interact appropriately with the general public; (7) ask simple questions or request assistance; (8) accept instructions and respond appropriately to criticism from supervisors; (9) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (10) be aware of normal hazards and take appropriate precautions; (11) travel in unfamiliar places or use public transportation; and (12) set realistic goals or make plans independently of others. (Tr. 243-44).

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 11**

moderate limitation in her ability to perform in eight additional areas.[5] No areas of marked limitation were found. (Tr. 243-44). The ALJ gave significant weight to the state agency medical consultants' opinions, except he did find mild impairment in Brookman's activities of daily living. (Tr. 23). The ALJ also noted that medication had proved somewhat helpful in managing Brookman's condition, but Brookman was not always compliant with her treatment regimen.

The ALJ's determination that Brookman could perform light work that did not require extended concentration or attention or extended and involved contact with the public is supported by substantial evidence and has not been shown to be a product of legal error. (Tr. 23).

2.    Past Relevant Work

Brookman contends that the ALJ committed error in finding that she could return to her past relevant work as a department store cashier and that such a finding is unsupported by substantial evidence.

In deciding whether a claimant can return to her past relevant work, an ALJ must make findings of fact regarding the claimant's remaining residual functional capacity (RFC) and the physical and mental demands of past relevant work, then the ALJ must compare the two. *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994).   SOCIAL SECURITY RULING 82-62.   The term "past relevant work" in the context of disability and supplemental security is defined as either (1) the

---

[5] Areas of moderate limitation included the ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) work in coordination with or proximity to others without being distracted by them; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (7) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and (8) respond appropriately to changes in the work setting. (Tr. 243-44).

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 12**

actual functional demands and job duties of a particular past relevant job, or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SOCIAL SECURITY RULING 82-61. *See also Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Social Security Ruling 82-62 considers the claimant to be the primary source for vocational documentation of past work, and the claimant's statements are generally considered sufficient for determining skill level, exertional demands, and nonexertional demands of past work. Ruling 82-62 also contemplates acquiring supplementary or corroborative information from other sources, such as employers or the DOT, regarding the requirements of the work as generally performed nationwide. SOCIAL SECURITY RULING 82-62. For situations where available documentation and vocational resource materials are insufficient to determine how a particular job is usually performed, it may be necessary to obtain the services of a vocational expert. SOCIAL SECURITY RULING 82-61. The ALJ has a duty to sufficiently develop the record, but the claimant has the burden at Step Four to prove an inability to perform past relevant work. *Villa*, 895 F.2d at 1023.

The ALJ found that Brookman's past relevant work as a department store cashier, as described in the <u>Dictionary of Occupational Titles</u> (DOT) did not require the performance of work-related activities in excess of her current residual functional capacity for a modified range of light work. (Tr. 24). The ALJ used the DOT listing for cashier/checker as the job most analogous to Brookman's past relevant work:

> Operates cash register to itemize and total customer's purchases in grocery, department, or other retail store. Reviews price sheets to note price changes and sale items. Records prices and departments, subtotals taxable items, and totals purchases on cash register. Collects cash, check, or charge payment from customer and makes

**<u>Findings, Conclusions and Recommendation of</u>**
**<u>the United States Magistrate Judge–Page 13</u>**

> change for cash transactions. Stocks shelves and marks prices on items. Counts money in cash drawer at beginning and end of work shift. May record daily transaction amounts from cash register to balance cash drawer. May weigh items, bag merchandise, issue trading stamps, and redeem food stamps and promotional coupons. May cash checks. May use electronic scanner to record price. May be designated according to items checked as Grocery Checker (retail trade).

DICTIONARY OF OCCUPATIONAL TITLES § 211.462-014 (rev. 4th ed. 1991). Brookman contends that the ALJ overstepped his area of expertise when he reached a decision based on the DOT description without obtaining vocational expert testimony and further erred in not specifically discussing the impact of Brookman's nonexertional impairments on her ability to perform her previous work.

The ALJ implicitly found that Brookman's past relevant work did not require extended concentration or attention and did not require extensive or involved public contact, but cites no resource for this statement and did not question Brookman about the mental demands of her work. In answer to her attorney's questions, Brookman indicated that she had difficulty "just trying to keep my wits about me" in performing her duties as a department store cashier. (Tr. 50). The DOT indicates that a department store cashier involves public contact with others and the ability to handle the demands of a financial transaction, but the court is not qualified to give vocational expert testimony in the first instance and cannot gauge the levels of concentration, attention and public contact that the ALJ was concerned with for purposes of a meaningful comparison of Brookman's RFC with the duties of her past relevant work.

The Commissioner's decision should be reversed and remanded so that the Commissioner can develop the record and obtain additional evidence, including vocational expert testimony or other

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 14**

qualified vocational evidence, regarding Brookman's ability to perform the mental demands of her past work as she performed it or as that work is generally performed in the national economy. If Brookman is found unable to perform her past relevant work, then the Commissioner should proceed to the final step of the sequential process and address the existence of other work available given Brookman's age, education, work history, and RFC.

       3.     Equal Protection

     Brookman filed this civil action on March 2, 2004, but thereafter the Commissioner indicated that it needed additional time to locate the ALJ's decision and the tape of the administrative hearing. The parties thereafter agreed to have this matter remanded to the Commissioner for further administrative proceedings pursuant to sentence six of 42 U.S.C. § 405(g). United States District Judge Terry Means signed an order to that effect on May 24, 2004. On July 23, 2004, the Commissioner filed a Motion to Vacate the Remand Order. On August 24, 2004, Judge Means entered an order vacating his previous order and accepting the Commissioner's answer for filing. Brookman asserts that it was a violation of her Fourteenth Amendment right to equal protection for the Commissioner to file a motion and brief to vacate the remand order because the Commissioner improperly used the sentence six remand procedure to gain an advantage and extend the time for filing her answer.

     The presiding District Judge has already ruled on the matter about which Brookman now complains. Brookman filed no opposition to the Commissioner's motion to vacate the remand order, and her belated efforts to challenge the constitutional underpinnings of that motion and the court's

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 15**

order granting the motion are unpersuasive.  Section 405(g), Title 42 of the United States Code,

provides that the "court may, on motion of the Commissioner of Social Security made for good cause

shown before the Commissioner files the Commissioner's answer, remand the case to the

Commissioner" for further administrative action.  42 U.S.C. § 405(g).  Brookman cites no authority

for the position that the Commissioner's need for additional time to locate and prepare the

administrative transcript does not constitute the requisite good cause for a sentence six remand, nor

is there any indication that the Commissioner sought a remand of this action for purposes other than

those stated in her original motion to remand this action.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further

administrative proceedings consistent with these proposed findings of fact and conclusions of law.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific

written objections in the United States District Court to the United States Magistrate Judge's

proposed findings, conclusions and recommendation within ten (10) days after the party has been

served with a copy of this document.  The court is hereby extending the deadline within which to file

specific written objections to the United States Magistrate Judge's proposed findings, conclusions

and recommendation until April 12, 2005.  The United States District Judge need only make a *de*

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 16**

*novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

<u>ORDER</u>

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until April 12, 2005 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections. It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED MARCH *22*, 2005.

CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 17**